**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENISE HINES,** | : | |
|       **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:06-CV-0077** |
|       v. | : | |
| | : | **(Judge Kane)** |
| | : | |
| **MICHAEL PROPER and** | : | |
| **MICHAEL THORNTON,** | : | |
|       **Defendants** | : | |

**MEMORANDUM AND ORDER**

Presently before the Court is Defendants' "Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or Strike Impertinent Material Pursuant to Federal Rule of Civil Procedure 12(f)" (Doc. No. 7) and all responsive papers thereto. On May 16, 2006, this Court heard oral argument on the matter sub judice. Having been fully briefed, the matter is now ripe for disposition. For the following reasons, Defendants' motion will be granted.

**I.    Background**[1]

Plaintiff is an African-American woman who resides and maintains a business in Susquehanna Township, Pennsylvania. Defendants are both police officers with the Susquehanna Township Police Department.    In early November 2005 Defendant Proper telephoned Plaintiff and accused her of committing a crime involving "pocketbooks, credit cards,

---

[1] For purposes of evaluating the pending motion to dismiss, the Court accepts as true all well-pleaded allegations contained in the Complaint (Doc. No. 1.)

Victoria's Secret, [and ] Piercing Pagoda . . . ."[2]  Defendant Proper advised Plaintiff to voluntarily report to the police station, but Plaintiff declined to report.

On November 21, 2005, Defendants, along with an officer from Lower Paxton Township, sought Plaintiff at her home.  Upon entering her house, Defendants advised Plaintiff that she was under arrest, showed her a warrant for her arrest, and read her her Miranda rights.  When Plaintiff left the room in search of her telephone, the officers followed her.  The Lower Paxton police officer prevented Plaintiff's husband from helping her locate her telephone, stating that she "[was] in [their] custody".  (Compl. ¶ 17.)  After following Plaintiff into the kitchen, the unnamed Lower Paxton police officer noted that Plaintiff was "'not the one on the video.'"[3]  (Id. ¶ 19.)  The officers informed Plaintiff that she had been misidentified and left her house.  That evening, Chief of Police Martin telephoned Plaintiff to apologize for the incident.

Plaintiff also complains of several incidents that allegedly occurred contemporaneously with the above.  Plaintiff alleges that Chief Martin told her that "they had video pictures of Plaintiff's daughter in Philadelphia at a "Target" [store] and that they were looking at her."  (Compl. ¶ 24.)  The Chief allegedly told Plaintiff that her daughter's boyfriend had a warrant out for his arrest.  Thereafter, Defendants Proper and Thornton visited the boyfriend at his place of employment, but did not arrest him.  Plaintiff further alleges that her grandson was questioned by his Middle School counselor about Plaintiff's whereabouts.  Plaintiff asserts that the Principal of her granddaughter's elementary school told Plaintiff's daughter that she was not welcome at the school and that her child would have to leave.  The Principal rescinded that order, but advised

---

[2] The Complaint contains no indication of the nature of the alleged offense.

[3] The Complaint does not indicate the nature or context of this video.

Plaintiff's daughter not to come to the school again, "given the nature of the problems [at the school]". (Compl. ¶ 14.) Plaintiff does not allege that Defendants instigated or were involved in the above incidents at school. In fact, Plaintiff makes no attempt to connect the alleged incidents at school with her brief November 21, 2005 arrest.

## II.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). However, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

## III.   Discussion

Plaintiff claims that Defendants falsely arrested and maliciously prosecuted her in violation of the First and Fourth Amendments to the United States Constitution. Plaintiff also asserts state claims of false arrest, intentional infliction of emotional distress, and civil

conspiracy.[4]  (Doc. No. 1.)

    **A.    False Arrest Claims**

Defendants offer three arguments in support of their motion to dismiss Plaintiff's false arrest claims: (1) that Plaintiff was never seized for the purposes of the Fourth Amendment; (2) that Defendants had probable cause to arrest Plaintiff; and (3) that Defendants enjoy qualified immunity from Plaintiff's claims. (Doc. No. 9.)  The Court will address each argument in turn.

A seizure is "a show of authority that restrains the liberty of a citizen, or a government termination of freedom of movement intentionally applied." Gallo v. City of Philadelphia, 161 F.3d 217, 223 (3d Cir. 1998) (internal citations omitted).  A seizure triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." Graham v. Connor, 490 U.S. 386, 395 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968)).

Defendants argue that because Plaintiff does not allege that she was physically touched, handcuffed, or taken from her home, she was not seized for Fourth Amendment purposes. However, actual physical touching is not required to effect a seizure. Gallo, 161 F.3d 217 at 223.  Plaintiff alleges that Defendants told her that she was under arrest and read her the Miranda rights. (Compl. ¶ 16.)  Plaintiff further alleges that officers followed her throughout her house as she looked for her phone and prevented her husband from assisting her. (Compl. ¶¶ 17-18.) Although Plaintiff was never physically restrained, Defendants nevertheless restrained her movements with the understanding that she was under arrest and not free to move without supervision.  When viewed in a light most favorable to her, Plaintiff alleges enough facts to

---

[4] Plaintiff withdrew her claim of abuse of power.  (Doc. No. 12.)

constitute a "seizure" for purposes of the Fourth Amendment.

Defendants also argue that they had probable cause to arrest Plaintiff and that they are insulated from liability for this claim pursuant to the doctrine of qualified immunity. Qualified immunity extends to a government official if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accepting all well-pled allegations as true, the Court must determine whether the officers' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). To determine whether a right was clearly established the question is whether the officers reasonably believed their conduct was lawful in light of the information they possessed at the time. Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) (extending immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant).

Plaintiff alleges that Defendants violated her constitutional right "to be free of false arrests and unlawful seizures without just and proper reasons." (Doc. No. 1 ¶ 6.). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). If a plaintiff is arrested pursuant to a facially valid warrant, the Court may only find probable cause lacking if the officers "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and that "such statements or omissions [were] material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (citing

5

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)). An officer makes an assertion with a reckless disregard of the truth "when viewing all the evidence, [the officer] must have entertained serious doubts as to the truth of this statements or had obvious reasons to doubt the accuracy of the information he reported." Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (citation omitted).

Plaintiff concedes in her Complaint that Defendants arrested Plaintiff pursuant to an arrest warrant.[5] (Doc. No. 1, ¶ 16.) Although Plaintiff baldly asserts a violation of her Fourth Amendment right to be free from unlawful seizures without probable cause, she does not allege that the warrant issued for her arrest was invalid. Plaintiff further makes no allegations that either defendant made false statements or omitted exculpatory information in application of the arrest warrant, or unreasonably relied upon the warrant. Rather, Plaintiff merely asserts that Defendants arrested her for a crime she did not commit and therefore, her Fourth Amendment rights were violated. (Doc. No. 1 at 2, 4, 6.) However, "[t]he proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). Plaintiff alleges no circumstances that would vitiate the protection afforded officers

---

[5] Although in reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant, a court may properly look at public records in addition to the allegations in the complaint without converting the motion into one for summary judgment. Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999). The Court notes that a warrant was issued for Plaintiff's arrest for two counts of theft by unlawful taking by Magisterial District Judge Raymond Shugars on November 21, 2005. (Doc. No. 7, Ex. 2.) The Court further notes that Defendant Thornton prepared the affidavit of probable cause in application of the warrant. (Id.)

who act pursuant to a warrant.  For example, there are no allegations that the arrest warrant was invalid for want of probable cause or that Defendants lied to obtain the warrant, or that Defendants unreasonably relied upon the warrant when they arrested Plaintiff on November 21, 2005.

At oral argument, Plaintiff argued that the Court should allow some discovery on this matter prior to adjudicating the issue of qualified immunity.  Plaintiff argues that she is unaware of how her name arose in connection with the crimes reported and needs discovery to determine whether Defendants intentionally implicated her in the crimes in order to sully her reputation, an allegation Plaintiff does not make in her Complaint.  Plaintiff argues that without some discovery, she can not properly respond to Defendant's qualified immunity defense.  Unfortunately for Plaintiff, the defense of qualified immunity was specifically created to protect public officials from the "broad-ranging discovery that can be peculiarly disruptive of effective government."  Anderson, 483 U.S. at 646 n. 6.  Qualified immunity is a recognition that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions, and, quite possibly, deters qualified people from accepting public service.  Harlow, 457 U.S. at 815.  For this reason, Courts are instructed to resolve qualified immunity issues "at the earliest possible stage of the litigation."  Id.  "Unless the plaintiff's allegations state a claim for violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery."  Mitchell, 472 U.S. at 526.

The Complaint as filed does not make allegations sufficient to defeat Defendants' qualified immunity defense.  The facts alleged do not support a claim that the officers violated

clearly established law and arrested Plaintiff without probable cause. Accordingly, Plaintiff's false arrest claims, as now plead, must be dismissed.[6] However, because the Court will grant Defendants' motion based entirely on Plaintiff's failure to properly allege her claim, and for reasons discussed more fully in section F of this memorandum, the Court will allow Plaintiff an opportunity to amend her complaint.

### B.   Malicious Prosecution Claim

Plaintiff bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest. To prevail on this claim, she must show that Defendants lacked probable cause to arrest her. Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir. 2005). However, as already discussed, Plaintiff fails to allege that the warrant was invalid or that Defendants' reliance on the warrant was unreasonable. Because Plaintiff fails to establish that a constitutional right was violated, Defendants are entitled to qualified immunity with respect to the malicious prosecution claim as well. Accordingly, this claim, as now plead, must also be dismissed.

### C.   Free Speech Claim

Plaintiff does not specifically allege in her Complaint how Defendants violated her First Amendment rights. (Doc. No. 1.) In her brief in opposition to the instant motion, Plaintiff argues that Defendants violated her First Amendment right to freedom of expression, as incorporated by the Fourteenth Amendment, when they retaliated against her for speaking with her attorney. (Doc. No. 12 at 6-7.) However, Plaintiff's claim must fail. To sustain a non-employment First

---

[6] For the same reasons as above, Plaintiff's state law claim for false arrest also fails. A false arrest under Pennsylvania law is defined as "1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so." Brockington v. City of Philadelphia, 354 F.Supp. 2d 563, 572, n. 10 (E.D. Pa. 2005) (citation omitted). Plaintiff fails to allege sufficient facts to support a finding that Defendants lacked probable cause to arrest her.

Amendment retaliation claim, Plaintiff must allege: (1) that she engaged in a protected activity; (2) that the Defendants responded with retaliation; and (3) that the protected activity was the cause of the retaliation.  See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997).

Viewing all facts as true and in the light most favorable to the non-moving party, Plaintiff has alleged insufficient facts to sustain a First Amendment claim.  The Complaint fails to identify what theory of First Amendment deprivation Plaintiff is pursuing, fails to identify the protected speech, and fails to allege any facts connecting the arrest to the allegedly protected speech.  In fact, Plaintiff cites to the First Amendment solely in support of her "right to be free of false arrest, and unlawful seizures of her person without just and proper reasons."  (Compl. ¶ 6.)  The right to be free from unlawful seizures is not a recognized First Amendment claim.  While Plaintiff's brief in opposition loosely frames her First Amendment claim as based on a theory of retaliation for speaking with her attorney, her brief is outside the scope of this motion.[7]  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) (noting that when deciding a

---

[7] The Court notes that actions taken by police officers in retaliation for citizen challenges to authority have been recognized by several circuit courts of appeal as properly subject to a First Amendment claim under § 1983.  McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir. 2001); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 418-19 (2nd Cir. 1999); Knox v. Southwest Airlines, 124 F.3d 1103, 1107-08 (9th Cir. 1997).  Although the Third Circuit has not squarely confronted this issue, it has specifically cautioned district courts against allowing unsubstantiated First Amendment retaliation claims against police officers to proceed to trial, stating:

> Officers should not by reason of potential civil liability be discouraged from intervening when their services are needed by the not surprising circumstance that a claim has been lodged against a person with whom they have had previous adverse dealings. Society may pay a high price if officers do not take action when they should do so.

Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003).

motion to dismiss, the Court may look only to the facts alleged in the Complaint and its attachments). Accordingly, Plaintiff's claim will be dismissed.

### D.     Intentional Infliction of Emotional Distress Claim

Defendants correctly note that the Pennsylvania Supreme Court has never expressly recognized intentional infliction of emotional distress as a viable cause of action under Pennsylvania law. Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 989 (Pa. 1987) (leaving "to another day" whether this cause of action is viable in the Commonwealth). However, the Third Circuit has predicted that "the Pennsylvania Supreme Court will ultimately recognize this tort" and that Pennsylvania courts will follow the basic formulation of the tort found in § 46 of the Restatement (Second) of Torts. Pavlik v. Lane Limited/Tobacco Exporters Int'l, 135 F.3d 876, 890 (3d Cir. 1998); see Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (holding that "[a]lthough we have never expressly recognized a cause of action for intentional infliction of emotional distress . . . we have cited [to § 46 of the Restatement (Second) of Torts] as setting forth the minimum elements necessary to sustain such a cause of action). Section 46 provides in pertinent part that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). Defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment (d) (1965). In addition, Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress. Bougher v.

University of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989).

Defendants argue that Plaintiff has not alleged facts necessary to support a claim of intentional infliction of emotional distress.  (Doc. No. 9.)  Plaintiff argues that Defendants' alleged conduct was "egregious" and points to allegations that Defendant Proper "insulted the plaintiff in effect calling her a liar."  (Doc. No. 12 at 10.)  The Court finds these allegations insufficient to state an intentional infliction claim.  The alleged conduct specifically attributed to Defendants does not rise to the level of "extreme or outrageous".  Although Plaintiff was clearly upset and embarrassed by the ordeal, she does not allege that she suffered any severe emotional injury because of the brief encounter with the officers.  Accordingly, this claim must be dismissed.

### E.    Civil Conspiracy Claim

Plaintiff's argument that she properly pleads a civil conspiracy claim between Defendants and Susquehanna School District officials is misguided.  Plaintiff neither alleges that Defendants conspired with Susquehanna School District officials, nor that Defendants ever communicated or met with school officials.  The school officials are not parties to this action and Plaintiff does not allege that their actions had any connection with Defendant's investigation of Plaintiff.  Accordingly, this claim must also be dismissed.

### F.    Leave to Amend

If a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Court finds that amendment would not be inequitable or futile at this stage of litigation.

Accordingly, the Court will grant Plaintiff ten days to amend her Complaint.

### IV.    Order

**AND NOW**, this 6th day of July, 2006, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's claims are **dismissed** without prejudice. Plaintiff may file an Amended Complaint within ten (10) days of this Order.

          S/ Yvette Kane
          Yvette Kane
          United States District Judge

Date: July 6, 2006